UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| UNITED STATES OF AMERICA | Criminal Case No. 1:22-cr-74-PB (1/2) |
| v. | Counts 1-6: Bank Fraud<br>(18 U.S.C. §§ 1344, 2) |
| PIERRE ROGERS and<br>JOSHUA LEAVITT, | Count 7: Wire Fraud<br>(18 U.S.C. §§ 1343, 2) |
| Defendants | Counts 8-9: Attempted Wire Fraud<br>(18 U.S.C. §§ 1349, 1343, 2) |
|  | Count 10: Money Laundering<br>(18 U.S.C. § 1957) |

INDICTMENT

The Grand Jury charges:

Background

At all times material to this indictment:

1. TD Bank was a financial institution as defined by Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC").

2. The defendant, PIERRE ROGERS, was a resident of New Hampshire, until on or around July 23, 2021, when he became a resident of California.

3. The defendant, JOSHUA LEAVITT, was a resident of New Hampshire.

4. Dark Matter Associates, Demeter Project, Monticello Transnational, Puro Trader (d/b/a Yahyn), Puro Lounge, Puro Group, and Sunju (collectively, the "Companies") were corporate entities with business addresses or operations in New Hampshire.

5. At all relevant times, JOSHUA LEAVITT owned or controlled Dark Matter

Associates and Demeter Project.

6. At all relevant times, PIERRE ROGERS owned or controlled Sunju.

7. At all relevant times, JOSHUA LEAVITT and PIERRE ROGERS owned or controlled Monticello Transnational, Puro Trader, Puro Lounge, and Puro Group.

COUNTS ONE THROUGH SIX
Bank Fraud
[18 U.S.C. §§ 1344 and 2]

8. Paragraphs 1 through 7 are realleged.

CARES Act Payroll Protection Program

9. The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses.

10. In or around March 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans suffering adverse economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and expanded existing programs, including programs created or administered by the SBA.

11. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

12. To obtain a PPP loan, the authorized representative of a business was required to state the business's average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

13. A participating lender would then process the PPP loan application. If the PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were fully guaranteed by the SBA.

14. TD Bank participated in the PPP as a lender to small businesses.

## The Scheme and Artifice to Defraud

15. Between on or about April 6, 2020, and continuing through on or about January 21, 2021, in the District of New Hampshire and elsewhere, the defendants,

PIERRE ROGERS

and

JOSHUA LEAVITT,

aided and abetted by each other, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud TD Bank.

16. The defendants applied for approximately 14 PPP loans from TD Bank.

17. The principal amount of these loans totaled approximately $2 million.

18. As part of the PPP loan applications, the defendants were required to provide supporting documents substantiating their request for funds. For each PPP application, the defendants presented tax documents that were purportedly filed with the Internal Revenue Service ("IRS"). The supporting tax documents were fraudulent because they were either never filed with the IRS or because they overstated the Companies' actual payrolls and earnings reported to the IRS.

19. Because the amount of a PPP loan was based, in part, on a loan applicant's monthly payroll, the defendants obtained larger PPP loans than they were eligible to receive by fraudulently inflating the Companies' payrolls.

20.     TD Bank relied, in part, on the fraudulent documents in making determinations about whether to approve the loans.

## The Offenses

21.     On or about the dates listed below, in the District of New Hampshire and elsewhere, the defendant and defendants identified below executed and attempted to execute the scheme by submitting false documentation to TD Bank to fraudulently obtain loans.

| Count | Date | Defendant(s) | Entity | Amount Awarded |
|---|---|---|---|---|
| 1 | 04/14/20 | Rogers, Leavitt | Puro Trader | $132,756 |
| 2 | 04/27/20 | Leavitt | Dark Matter Associates | $30,052 |
| 3 | 04/27/20 | Rogers, Leavitt | Puro Lounge | $100,000 |
| 4 | 05/06/20 | Rogers, Leavitt | Puro Group | $175,000 |
| 5 | 07/07/20 | Rogers | Sunju | $175,000 |
| 6 | 07/14/20 | Leavitt | Demeter Project | $34,667 |

All in violation of Title 18, United States Code, Sections 1344 and 2.

COUNTS SEVEN THROUGH NINE
Wire Fraud and Attempted Wire Fraud
[18 U.S.C. §§ 1343, 1349 and 2]

22. Paragraphs 1 through 10 are realleged.

CARES Act Economic Injury Disaster Loan Program
and Economic Injury Disaster Grants

23. The Economic Injury Disaster Loan ("EIDL") program was another source of financial assistance provided by the CARES Act. It provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. The EIDL program was administered by the SBA.

24. The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses, known as Economic Injury Disaster Grants (EIDGs). The amount of the advance was determined by the number of employees the applicant certified having. The advances did not need to be repaid.

25. To obtain an EIDL and/or EIDG, a qualifying business was required to apply to the SBA and provide information about its operations, such as the number of employees and the entity's gross business revenues and cost of goods sold in the 12 months prior to January 31, 2020. The amount of the loan, if approved, was determined based, in part, on the information provided concerning the number of employees, gross revenue, and cost of goods.

26. Any funds issued under an EIDL or EIDG were issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

27. EIDL and EIDG applications were received by a cloud-based platform through a

server located in Des Moines, Iowa.

## The Scheme and Artifice to Defraud

28. Between on or about March 30, 2020, and continuing through on or about November 23, 2021, in the District of New Hampshire and elsewhere, the defendants,

PIERRE ROGERS

and

JOSHUA LEAVITT,

aided and abetted by each other, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud the SBA and to obtain money by means of false and fraudulent pretenses, representations, and promises.

29. The defendants applied for approximately 12 EIDLs from the SBA.

30. The total principal amount of the loans was approximately $3 million.

31. As part of the loan applications, the defendants were required to provide certain information about the Companies. For each EIDL application, the defendants misrepresented the Companies' financial health and payroll. Sometimes, the defendants also provided tax documents that were purportedly filed with the IRS. The supporting tax documents were fraudulent because they were either never filed with the IRS or because they overstated the Companies' actual payrolls and earnings reported to the IRS. The SBA relied, in part, on the false information provided in the loan applications, including the supporting documents, in making determinations about whether to approve the loans.

## The Wire Fraud Offense

32. On or about the date listed below, in the District of New Hampshire and elsewhere, for the purpose of executing the scheme to defraud, the defendants transmitted and

caused to be transmitted writings, signs, and signals in interstate commerce by sending the fraudulent loan application listed below to the SBA through the SBA server located in Des Moines, Iowa.

| Count | Date | Defendant(s) | Entity | Amount Awarded |
|---|---|---|---|---|
| 7 | 03/31/20 | Rogers, Leavitt | Monticello Transnational | $29,000 EIDL plus $7,000 EIDG |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## The Attempted Wire Fraud Offenses

33. On or about the dates listed below, in the District of New Hampshire and elsewhere, for the purpose of attempting to execute the scheme to defraud, the defendant and defendants identified below transmitted and caused the transmission of writings, signs, and signals in interstate commerce by sending the email communications listed below to the SBA through SBA servers located outside of New Hampshire.

| Count | Date | Defendant(s) | Entity | Transmission | Approx. Amount Sought |
|---|---|---|---|---|---|
| 8 | 06/15/21 | Leavitt | Dark Matter Associates | Email requesting reconsideration of loan denial. | $256,000 |
| 9 | 11/23/21 | Rogers, Leavitt | Puro Trader | Email requesting reconsideration of loan modification request. | $500,000 |

All in violation of Title 18, United States Code, Sections 1349, 1343 and 2.

<u>COUNT TEN</u>
Money Laundering
[18 U.S.C. § 1957]

34. On or about July 9, 2020, in the District of New Hampshire and elsewhere, the defendant,

PIERRE ROGERS,

did knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, namely, Bank Fraud as alleged in Count 4 of this Indictment. Specifically, ROGERS wired $107,780 from a Puro Group bank account at TD Bank ending in 1828 to Private Collection Motors to purchase a 2011 Rolls Royce Ghost with a VIN ending 0157.

All in violation of Title 18, United States Code, Section 1957.

NOTICE OF FORFEITURE

Upon conviction of one or more of the offenses set forth in Counts One through Nine of this Indictment, the defendants shall forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including a sum of money equal to the proceeds of the charged offenses.

Upon conviction of the money laundering offense alleged in Count Ten, the defendant shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1) any property, real or personal, involved in such offense, or any property traceable to such property.

All in accordance with 18 U.S.C. §§ 982(a)(1)(C), 982(a)(2), 28 U.S.C. § 2461(c) and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

Dated: June 27, 2022        /s/GJ Foreperson
                                                          FOREPERSON

JANE E. YOUNG
UNITED STATES ATTORNEY

By:     /s/ Alexander S. Chen
         Alexander S. Chen
         Special Assistant U.S. Attorney